Good morning, your honors. My name is Ben Coleman. I represent the appellant, Salvador Acosta. I was going to start with the cluster of 404B issues and was going to first start off with the fact that the government has conceded error in this case. The government concedes that the district court erred in failing to give the 404B limiting instruction. So the only question as to that issue, at least that specific part of the 404B claim, is whether or not the district court has conceded error in this case. Whether the error was harmless. In this case, we have an unusual situation because perhaps the best indication that the error was not harmless is that the district judge specifically commented that it was a remarkable trial and it probably could have gone either way. That tends to show, and I think a strong indication, that it was a closed case and an error like this, an important instructional error, is not harmless and the burden is on the government to show harmless error and that they cannot satisfy that burden. It's hard to know, though, what to read into the district court's comment because it was a fleeting comment at sentencing. It wasn't a comment directly on the quantum of evidence necessarily. I don't read it that way. When you look at the evidence itself, I think the argument encounters some difficulty. It is the government's burden, but here there was evidence that he transported $4.5 million worth of fentanyl, a highly toxic drug. He was found with the drugs in his car. There was an odor emanating, a masking agent. You had the inconsistent statements to the law enforcement. So when you actually look at the evidence, doesn't it present some issues for the point you're making? Well, I guess taking the second part of that question first, I believe that the evidence in this case was no stronger than the evidence in many other cases where this court has found harmful error in similar type border situations. Of course, we've cited the in-bank case in Velarde Gomez where the evidence was, I believe, much stronger than the evidence against Mr. Acosta. Your Honor had mentioned inconsistent statements. The defendant in Velarde Gomez had made inconsistent statements and frankly a somewhat ridiculous statement to the officers at the time of the arrest. Here there really were no inconsistent statements made by Mr. Acosta. But in any event, we have cases like Velarde Gomez. I'm not sure I agree with that. I mean there were some statements that he made about where he was going that were inconsistent and that sounded at the very least questionable to the law enforcement. So we do have that. I think the inconsistencies, certainly the government has tried to create some inconsistency there, but I think his statements were generally consistent that he was headed to work at the Pajango Resort, which is where he in fact worked. But even if there is that slight, you want to say there's a slight inconsistency there, we have cases like Velarde Gomez, an in-bank case, Foster, another Ninth Circuit case, Carudo. We've cited a list of them. These are border cases under virtually identical facts where this court has found that errors were not harmless, that the evidence wasn't so overwhelming. And getting back to the first point about was the judge's comment somewhat vague or maybe I'm taking it out of context, I don't think it's vague in the sense that the judge said the trial could have gone either way. And this is the judge that had an opportunity to evaluate Mr. Acosta's testimony, got to look at him face-to-face, and evidently the judge felt something about the facts of the case and the way it came in that he felt the case could have gone either way. I think that that means, I think the only reasonable interpretation is that the jury could have gone either way on the case. I know you mentioned the judge's comment, but the fact that the jurors deliberated and delivered a conviction within three hours, doesn't that suggest the evidence was pretty overwhelming? I mean, I think the one, I know you may say it might have been the 4-4 evidence that somehow nudged the jury to deliver a verdict in three hours, but it seems like the real key evidence, and I don't know if there's any explanation, is the fact that he had $4.5 million worth of drugs in his car and he doesn't know how it got there. I mean, just, you know, how else can you explain that other than he knew about it? Well, let me take the length of the deliberations first, and then I did want to mention something about the $4.5 million. As far as the length of the deliberations, Your Honor mentioned three hours, but this was a very short trial. So it's not like the case had gone on for months and then jury came back right away. When you look at the relative length of deliberations versus, it was basically like a one-day trial, I don't think the deliberations were unusually short. In some of these other cases that we've cited, I don't think there were lengthy deliberations. That wasn't something that caused this court to say that the error was not harmless. The $4.5 million, I mean, any time somebody brings drugs to the border, it's a substantial amount of money. I mean, these are valuable cargo. I mean, the government says $4.5 million. On a wholesale level, it's not nearly as much money. But whenever people come to the border, these are large quantities of drugs that, in all these cases, that are brought to the border. And that wasn't something that caused this court to say that, well, the evidence was just overwhelming, and therefore the error was harmless. I do think the 404B evidence was very important and prejudicial, and that might have been something that really convinced the jurors to go with guilt in the sense that, I mean, here, well, he engaged in this large ecstasy transaction. He's a drug dealer. Of course he did it. He's guilty. They were given no instruction as to how to evaluate the 404B evidence. But Mr. Acosta didn't object to the absence of that instruction once the final instructions were provided? Well, the government concedes that it's not playing error review as to this issue, and what the judge said was, over the defense's objection, I'm going to allow the government to argue the 404B evidence, and I'm going to pull the instruction. Was that limited to the border-crossing evidence, though? Well, the judge's comment wasn't. He said, over defense objection, I'm going to allow the argument, and I'm going to pull the instruction. I think that that indicates that the judge knew that the instruction was originally in the packet. That was what the defense wanted. The judge pulled it, and he said he pulled it over objection. And the government has waived any argument that this wasn't preserved. Where in the government's brief are you saying they waived the argument regarding the crossings evidence? I thought they ceded the 404B error regarding the Uber and Lyft driving history and the purchases. But where in their brief did they waive the argument regarding the crossings evidence? I'm saying they waived it as to the instructional error, not as to the crossing evidence. But the government concedes that it's not plain error as to the instructional error. Okay. So what language are you relying upon in the government's brief? Because I thought the government brief said that the limiting instruction should have been given for the purchases, evidence, and the Uber and Lyft driving history and not the crossings. That's correct. Okay. But to me, you're arguing now that the government has ceded the point on the crossings evidence. Am I misunderstanding your argument? My argument, and I guess the government can correct me if I'm wrong, but I don't think I'm wrong, is that they've conceded error that the judge should have given the limiting instruction, and they've conceded that that issue wasn't forfeited. They've conceded that. Should have given the limiting instruction as to what evidence? As to the ecstasy, supposed ecstasy transaction, and as to the evidence that he had crossed successfully before because he stopped working for Uber and Lyft. I may be wrong, but I don't think the government ceded that point, at least not in the brief. I didn't see that. That's why I was asking you if it were in the brief you're relying upon to support that argument. But we can hear from the government and then I'll rebuttal. I believe as far as the instructional error, they concede at page. I was looking at page 17 of the red brief where I thought they mentioned error on the Uber and Lyft driving history and the purchases, but I didn't see anything about the crossing. Right. Page 17 is where they concede the error as to the instructional error. The question that I was responding to, my point is to Judge Bress. But instructional error as to only certain evidence. That's correct. To me, you're saying that the instructional error is for all 404B evidence, and I didn't see the government's concession as being that broad. No. Okay. It's not that broad. I agree with Your Honor. I was trying to respond to Judge Bress's question that he was asking whether the failure to give the instruction was not whether the defense objected to that. And my point was that the government concedes that that issue has not been forfeited. Their position as to that is that it was preserved, and it's a de novo review, not a plain error review. So that was my position on that. I did just want to briefly, if there were no other questions. Well, let me just say one other thing about the 404B. And that is that the issue of this ecstasy transaction, we've pointed out several things that indicate that the testimony from the government's expert was demonstrably incorrect. And the government has essentially not responded to that in their briefs. I mean, the price that's in that message is $3. There's no ecstasy pill that costs $3. Any government expert should have known that, would have known that. But was there argument below that this was improper inferences? Because it seemed more that the defense actually was trying to take advantage of this piece of the trial and to make the point strategically that, you know, if the government's coming forward with this alleged ecstasy evidence, it just shows they have a weak case. And it seemed like the defense more tried to harness this as opposed to objecting to it coming in. Well, I agree that the defense vigorously attacked it and tried to work with the fact that this expert testimony was flat out wrong. But the government continued to press forward with the testimony after it became clear that it was just false. It's just not true. There is no Spanish word oralis with two Ls. That's just false testimony. The fact that this was. But the point, the place to make that point is before the jury. Right. And the government, even though the evidence was false, they continued to argue to the jury that this expert testimony, they told the jury, you have evidence that the defendant sent a message. You can attribute any conclusion you want to that evidence. What the government should have done is they should have withdrawn the testimony. Once it became. Did the defense put on evidence that there's no Spanish word for this and it had to be false testimony? That was the time to do that before the jury, to persuade the jury that this was false testimony. I'm not sure the government would agree with you that this is false testimony. It's kind of trying to interpret slang. And so, you know, the interpretation is subject to challenge, but it's before the jury that that has to be done, not for us to say that it was false. Well, the issue, the question is, is if there is a suspicion of false testimony, then the government has to investigate it. And they and if they can't just stick their head in the sand and say, well, I don't know, maybe, maybe it's false. Maybe it's not. We're not going to inquire any further. And when you have an indication that ecstasy, any expert knows does not cost three dollars. You have a receipt that shows that he went to O'Reilly's Auto Parts, and that's what O'Reilly's means in the message. When there is no such word as Oralis, and anybody should know that, that this is just being made up to try to convict them on false evidence. And at some point, they have to, when they get to the point, and even now, they should say, look, this testimony is suspect. There should have been an investigation done to determine whether it was true or not. We'll ask the government if the government is of that view. I seriously doubt it. Well, the question is, have they done an investigation? Have they inquired as to whether ecstasy can cost three dollars a pill? Does that make any sense? Have they inquired as to this word Oralis? Is there any indication that that's true? If it's not, if that's false testimony, the government has an obligation, even at this point, to say the evidence was false. It's not true. And they have to do an investigation. They can't just come up and say, well, we don't know. We're not going to look into it. On the issue of the juror, just the biased juror real quick, this juror admitted that she had a certain amount of passion about the specific drug at issue in this case. And then when she was asked repeatedly, she didn't give a unequivocal answer that she could be fair. She said, I possibly could be fair. I think I could be fair. She said, I think a couple of times. Under this court's case law, the juror should have been struck both for implied and actual bias. Plain error review does not apply to structural errors like this. And even if it did, the juror's flat-out admissions made this error plain, and it's a structural error which would require reversal. All right, thank you, counsel. Thank you. Good morning. May it please the Court, Nicole Reese Fox for the United States. There was no reversible error in this trial. I'll go right to the last topic of discussion about the supposed false evidence. If you look at the actual testimony as opposed to the characterization, the actual testimony, for example, at ER 142, the agent said he agreed on cross-examination that, after consulting with his agent, that this interpretation was, quote, a possibility. He never testified that he knew for a fact what this message meant. What he did say was the message, his attention was drawn to the message because it was a message exchanged with the person who had called the defendant 13 times the night before his arrest. He didn't know what the message meant, so he consulted a co-case agent who speaks Spanish who gave him possible interpretations, and then he asked another agent who knows about drug jargon who confirmed that the word boats can mean 1,000 pills of ecstasy. So there was no false testimony. He was honest with the jury about what he did and what his conclusion was. Was the agent or the government aware of the receipts from O'Reilly's auto parts before that testimony was given? No, and, in fact, during the agent's testimony, the defense didn't even cross-examine them and say, if you knew that there was a place called O'Reilly's Auto Parts that sold cans of car spray, would that change your opinion? He didn't ask them that. Instead, he waited until the defendant testified to sort of shock and awe the jury with this magic receipt and have that moment to discredit the government's case. And I think that was the plan, and that was sort of the strategic decision that the defense made, to now say that we were required to strike testimony that they never moved to strike and that we barely argued to the jury. We stipulated that botes could mean boats or containers, and then the prosecutor didn't argue to the jury, we know what this means, he's a drug trafficker. What he said was, you heard about a message. The meaning is disputed. Conclude what you will from that. And I would submit that's entirely proper when you have disputed testimony like this, that the defense never even asked to strike. What's your response to opposing counsel's point that any experienced drug agent should know that $3 per pill for ecstasy is just not within the framework of reality? He cites a Fourth Circuit case from a few years ago. Drug prices vary dramatically across the country. This isn't in the record, but to satisfy my own curiosity, I looked it up, and $3 actually isn't out of the realm of possibility for a price in Southern California. And again, as your honors noted, this is something that Agent Flood could have been asked about. He was the value expert. He was there to testify about the value of fentanyl. On cross-examination, defense could have asked, what about the price of ecstasy? Is $3 reasonable? And Agent Flood could have responded if he knew. Again, because the defense decided to wait until the defense case to introduce this receipt for the first time, the agents were never cross-examined about it. And because they never asked to strike the testimony, I don't think that we can be held responsible for introducing testimony about what our agent's best guess was, what the text meant. It was not false. It was candid with the jury, and it was a very minor part of the case. Could you respond to opposing counsel's representation regarding the government's concession as to the 404B evidence? Yes, and I apologize if this wasn't clear from the briefs. The only objection that was made below was during the instruction conference, which is at ER 3-4, and that's when the prosecutor asked to pull the 404B limiting instruction. The defense objected. So to the extent any argument is about whether the district court erred in not giving a limiting instruction, that is preserved. It was only in reference to the crossing records. However, on the next page, the prosecutor flagged for the court that he was going to argue the inference from the Uber and Lyft evidence, and then the judge then sort of said over objection, I will not give the limiting instruction. So I think a fair reading of that is that to the extent we're talking about whether to give a limiting instruction, that issue is preserved. However, this idea that that objection was sufficient to cover any objection to the inferences argued in closing argument or to the supposed false testimony just takes that objection and reads it way too broadly. Even the case that the defense cites for the proposition that the claims have to be preserved, Valera Rivera says that the substance of the objection has to be raised below. The substance of this objection about the unreasonable inferences, the prosecutorial misconduct, was not raised either when the prosecutor flagged for the court, I'm going to argue this inference, or during closing argument when the prosecutor said, I submit to the jury, here is a reasonable inference. There was no objection during that either. Counsel, just so I understand your position, are you agreeing with opposing counsel that our analysis of the 404B argument should be de novo as opposed to plain error? It's for an abuse of discretion. The district court's decision whether to give a limiting instruction is an evidentiary decision reviewed for an abuse of discretion. Okay, so not de novo, as he said, but abuse of discretion is what you're positing. I believe the case law says that the question of whether evidence is 404B is reviewed de novo, but the court's decision whether to give a limiting instruction is reviewed for an abuse of discretion. I take it you're not. You seem to be saying the instruction should have been given at least as to most of this other act's evidence, and so the real point is harmlessness, so maybe you can speak to that. Yes, that is our view, is that we should have just let the limiting instruction stay. Your Honor. So if we were to review harmlessness de novo, right? Harmlessness is an analysis that this court does for the first time, so yes. And as Your Honors have noted, this is an extraordinary dollar amount, $4.5 million of a highly toxic substance, and it's not hidden deep in some compartment in the car. It's in the spare tire well, and the defendant testified that he opens his trunk and checks to see if his spare tire is there from time to time, and the chemist testified that just getting fentanyl on one's skin could be deathly, so a deadly toxic substance, $4.5 million, sitting in the trunk of a car from the time that he valeted his car overnight in some street in Tijuana until the morning, is just not a plausible story, and I would also point out that the cases that opposing counsel cites, the border cases where he says this court found that the error was still harmful, all of those cases are different types of error, so there are, for example, Doyle error, where the prosecutor comments on a defendant's silence. That's subject to a more stringent harmless error standard, whether it's harmless beyond a reasonable doubt, and actually in two of those cases, at least, the court noted that the jury deliberated for a long time. In Velarde Gomez, the jury deliberated for four days. In Carruto, the jury deliberated for a day and a half, so that is a relevant factor in the court's harmlessness analysis. Can you address Mr. Acosta's argument about or point about the judge's comment saying this was a close call? I mean, shouldn't we give some deference to that, especially here where, unlike most criminal cases, the defendant actually did testify and the judge may have observed his demeanor, his credibility, so shouldn't we give at least some deference to the judge's comment and, you know, assuming harmless error applies in assessing that? The problem with giving deference to the court's comment is that that was completely untethered to any individual piece of evidence. The question before the court is whether giving a limiting instruction about these small, tiny inferences, argument, and closing argument was the thing that would have tipped the balance. The court wasn't commenting on that. The court's view of the strength of the evidence several months later at sentencing is not enough to say that the case was so close that any little, teeny extra piece of evidence or instruction would tip the balance. It's certainly not enough to satisfy the defendant's burden on the claims that are reviewed for plain error where the defendant bears the burden of showing an effect on his substantial rights. Unless the court has any further questions, I would submit. Could you address the biased juror question before you leave? I'd be happy to. That claim, as with many of the others, is, again, reviewed for plain error. And given the court's case law, which talks about jurors that are equivocal or whose statements are not entirely clear, at a minimum, any error not striking that juror would not be plain. The court didn't strike the juror for cause. The policy council says this is structural error, so we don't review for plain error. What's your response to that? So this court's case law is undecided about whether it's structural error. However, this court's case law has consistently applied at least the first two prongs of plain error and hasn't yet decided whether it's the third and fourth prongs should be still considered under the same standards. So, for example, in Yamashiro, which is cited in our opening brief, sorry, it's cited in my answering brief at page 43, the court applied at least prongs one and two and then didn't decide whether it's structural error or not. But even if this court didn't want to get to prong two on prong one, the court didn't strike the juror for cause. Neither party sought to strike the juror for cause. Neither party used a peremptory strike for the juror. And, in fact, the defense counsel, the retained defense counsel in this case, said, I didn't even use all my peremptory strikes. So the idea that this juror was so obviously biased that the court was required to sua sponte strike her is not supported by the record. What's your take on whether or not the juror unequivocally stated that she could be objective? She did use language such as I feel, I think. But this court said in Katshedzian that jurors are human and they don't have to pledge with complete, they don't have to pledge impartiality with complete certainty. And so looking, applying that standard to this juror's comments, I think that she satisfied the court. And the court has been instructed to defer to the district court who views the juror's demeanor. She satisfied the court that she could be fair. And I think she satisfied both attorneys because they didn't object. She also, after the initial exchange, when the court went back around and questioned every juror, there's a questionnaire that they answer where they say their occupation and what they do. And then they are asked again, each juror, whether there's any reason they couldn't be fair. And that's at ER 37. She says, I don't believe there's any reason I couldn't be fair and impartial. And this is after the whole exchange with the court. Several other jurors said, had an exchange with the court and then said, I still think I can't be fair and impartial. Or the court and the attorneys decided that the answers were unsatisfactory or the juror was not rehabilitated. And that simply didn't happen in this case. Unless the court has any other questions, we'd submit. It appears not. Thank you, counsel. Thank you. I think we have some clarity now in that the government concedes instructional error. Whether it's de novo or abuse of discretion doesn't matter because they concede the error. So the question is just harmlessness. The government also concedes that this issue wasn't forfeited. So the burden is on the government. For the first time today, the government says that they don't think it should be harmless beyond a reasonable doubt standard. It should be the Kodiakus standard. We think it should be harmless beyond a reasonable doubt. But either way, we think we can win. And I just want to quote a couple things from the Supreme Court. This is from Kodiakus. It is not the appellate court's function to determine guilt or innocence, nor is it to speculate upon probable reconviction and decide according to how that speculation comes out. And this is from Bolenbach. In view of the place of importance that trial by jury has in our Bill of Rights, harmless error review is not intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be. But we do have to determine whether or not it's likely that the outcome would have been different, right? Right. And we have a judge who saw the live record. We have the district judge who saw the live record and said, this case could have gone either way. So that district judge who was witnessing firsthand the live record thinks that this case was close. He got to see Mr. Acosta testify. And a lot of the cases that the government talks about, the defendant didn't testify. But are you saying then that we have no discretion in this? We have to defer to what the district court judge said to that language so we don't get to make an independent determination of the likelihood that the outcome would have been different? We're bound by what the district court observed? No, I don't think the court is bound. But in a case where the defendant testifies and the judge goes out of his way to say, I think this case could have gone either way, that shows. That's true for. . . I've never had that happen. That's why you have a jury, because the case could go either way. I've never had a judge say that. Typically the judge says this case was overwhelming. Or they'll say it's a close case. Sometimes they'll say it's close. So that doesn't mean that the error was harmful necessarily? Well, I think it's a good indication that the case was close, that the defendant's testimony was persuasive. In addition, this was an important error. Put aside. . . Let's assume that the testimony wasn't false. But this was important. . . They had a law enforcement expert give a specific testimony that Mr. Acosta was a drug dealer. He had engaged in a 6,000 pill ecstasy transaction. The jurors, without a proper limiting instruction, are going to sit there and think, this guy's a drug dealer. He's a major drug dealer. Of course he's guilty. I mean, this was an important part of the case. They want to say it wasn't important. But then why did they call an expert to give this testimony if it wasn't important? They brought in a law enforcement expert, which jurors are going to defer to, because they needed something to push them over the top in this case. It was a close case, as the district judge said. And the judge erred in failing to give the appropriate cautionary instruction. And when you have a judge who actually witnessed the defendant's testimony and says this case could have gone either way, that is precisely the type of case where the government has not met its burden. It's its burden to show harmless error. And they haven't met this burden. The Supreme Court has said, if the court is unclear, if it's a toss-up, the tie goes to the defendant, and the error is harmful. The Supreme Court has said that over and over again in cases like O'Neill v. McAninch, in several cases, if it's a close call and the court is not certain, the tie goes to the defendant and he gets a new trial. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for today. We are adjourned. All rise. This court for this session stands adjourned.
judges: Rawlinson, Lee, Bress